UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REGINALD N.,

          Plaintiff,

     v.                                                          **DECISION AND ORDER**

                                                                                   19-CV-6662S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

       1.       Plaintiff Reginald N.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.       Plaintiff protectively filed his Title II application with the Social Security Administration on July 28, 2015, and his Title XVI application on September 8, 2015. Plaintiff initially alleged disability beginning October 16, 2013, later amended to August 10, 2013, due to osteoarthritis of the bilateral knees; type II diabetes; diabetic neuropathy; spine disorder; obesity; shoulder osteoarthritis and impingement syndrome; post-traumatic stress disorder; anxiety disorder; mood disorder; and (initially) low back pain; antisocial personality disorder. Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On November 9, 2016, ALJ Benjamin Chaykin held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Thomas Heiman appeared and testified. (R.[2] at 82; see Docket No. 9, Pl. Memo. at 1 (transcript not included in record).) At the time of the hearing, Plaintiff was 48 years old (born January 4, 1968, R. at 92; see Docket No. 14, Def. Memo. at 1 n.1) and had high school education. His past relevant work was as a cook (medium exertion work) and food manager (light work). (R. at 30.) He had no substantial gainful activity since August 10, 2013, claimed onset date (R. at 17, 20, 30).

4. The ALJ considered the case *de novo* and, on February 14, 2017, issued a written decision denying Plaintiff's applications for benefits.

5. The Appeals Council remanded on November 30, 2017, amending the onset date to August 10, 2013, and ordered the ALJ to consider further Plaintiff's maximum residual functional capacity and to obtain evidence from the vocational expert (R. at 99 17).

6. The ALJ held the second video hearing on August 15, 2018, at which Plaintiff (represented by counsel) and vocational expert Brian Spillers testified (R. 38-71, 17).

7. The ALJ on remand considered the case *de novo* and, on October 26, 2018, issued a written decision again denying Plaintiff's applications for benefits (R. at 17). The ALJ rendered a residual functional capacity assessment that differs from the initial decision; at first, the ALJ found Plaintiff could perform light work (with additional limitations). On remand, the ALJ found Plaintiff could perform sedentary work (with

---

[2]Citations to the underlying administrative record are designated as "R."

additional limitations, as described below).  Plaintiff became an individual of advanced age and then turned fifty years old during the pendency of these applications, making him disabled under the Medical-Vocational Grids as of January 4, 2018 (Docket No. 14, Def. Memo. at 1 nn.1 (noting ALJ's typographical error on Plaintiff's birthday), 2; R. at 31), but not before that (R. at 30-32).  Thus, the issue is determination of disability over a closed period of August 10, 2013 (Plaintiff's revised onset date), until January 4, 2018 (when Plaintiff turned 50) (id.), or only until December 31, 2016 (date last insured (R. at 31)). The ALJ concluded Plaintiff was not disabled for Title II benefits from August 10, 2013, through his December 31, 2016, date last insured (R. at 32), but as for his Title XVI supplemental security income application, the ALJ found Plaintiff only was disabled as of January 4, 2018 (erroneously recorded as January 23) (R. at 32).

8.     After the Appeals Council denied Plaintiff's request to review the ALJ's remanded decision (R. at 1), he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

9.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 14.)  Plaintiff filed a response on July 8, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

10.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

---

[3]The ALJ's October 26, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

11. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

    13.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

    14.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

15.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of August 10, 2013.  (R. at 17, 20, 84.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  osteoarthritis of the bilateral knees; type II diabetes; diabetic neuropathy; spine disorder; obesity; shoulder osteoarthritis and impingement syndrome; post-traumatic stress disorder; anxiety disorder; mood disorder; and (initially) low back pain; antisocial personality disorder (R. at 20, 84).  As for his obesity, Plaintiff was 5 foot, 4" tall, 181 pounds (R. at 89; see R. at 919) or BMI score of 30.15 (R. at 20).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 21-24, 85-87.)

16.     Next on remand, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with exceptions no climbing of ropes, scaffolding, or ladders; occasional climbing of ramps or stairs; occasional stooping, crouching, balancing, kneeling, and crawling; no exposure to dangerous hazards such as unprotected heights or dangerous machinery; occasional overhead reaching, frequent reaching in all other directions; frequent handling and fingering; frequent operation of foot controls; and limited to simple, repetitive tasks (R. at 24).

17.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 30.)  At step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  The ALJ posed hypotheticals to the second vocational expert who concluded that a claimant like Plaintiff in age, education, and work skills and experience could perform such jobs as document preparer, lens inserter, and final assembler (all sedentary work) (R. at 30-31.)  Accordingly, the ALJ found that Plaintiff was not disabled from August 10, 2013 (the amended onset date), through December 31, 2016, the date last insured.  (R. at 17, 31-32.)  The ALJ concluded that Plaintiff became disabled when he turned 50 years old on January 4, 2018, through the date of decision (R. at 31).

      18.    Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to address adequately physical opinion evidence, regarding not recognizing his more significant limitations against stooping and reaching. Plaintiff also contends that the ALJ failed to develop adequately the record as to Plaintiff's psychological impairments.  For the reasons that follow, this Court agrees with Plaintiff's argument concerning the medical opinion supporting the physical RFC.

      19.    Addressing first Plaintiff's alleged limitations in stooping and reaching, the ALJ found that Plaintiff could occasionally stoop or reach overhead (R. at 24).

      20.    Consultative examiner Dr. Ingrid Wohlgemuth found on March 5, 2018, that Plaintiff had marked limitation in squatting, bending, and kneeling and moderate limitation "for activities that require the arms to go above the head" (R. at 922).  During the examination, Plaintiff declined to squat and used a prescribed cane, but the doctor opined that the case did not seem necessary (R. at 920).  He stated to the doctor that his activities of daily living included cooking twice a week, laundry once a week, with his wife helping him with dressing (R. at 919).

21. The ALJ, however, noted that the medical evidence did not demonstrate nerve root compression, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raise, thus Plaintiff's spinal condition did not meet or medically equal Listing 1.04 requirements (R. at 22). The ALJ pointed out from Dr. Wohlgemuth's examination that Plaintiff "demonstrated full motion of the hips, knees and ankles, bilaterally, as well as full motion of the elbows, forearms and wrists, bilaterally" (R. at 26-27). Plaintiff, however, demonstrated limited forward elevation and abduction of the bilateral shoulders (R. at 27; 921). The ALJ acknowledged Plaintiff's ongoing shoulder pain, leading to the RFC that limited Plaintiff to occasional use of ramps, stairs, and postural activities with limits to not climbing ropes, stairs, scaffolds, or ladders (R. at 27). The ALJ found Plaintiff could occasionally reach overhead and could frequently reach in all other directions (R. at 27).

22. The ALJ thus gave Dr. Wohlgemuth's findings "moderate weight" (R. at 29), concluding that

> "although the evidence is generally consistent with exertional and postural limitations, Dr. Wohlgemuth's 'moderate' limitations are vague, and the claimant's generally mild baseline spinal and lower extremity examination findings are not consistent with marked limitations as to squatting, bending or kneeling. Nor does the record suggest that the claimant should avoid even 'mild' exertion, which is vague in any case,"

(R. at 29).

23. Plaintiff now argues that the ALJ erroneously assessed raw medical data (Docket No. 9, Pl. Memo. at 14). He claims that Dr. Wohlgemuth's opinion was consistent with Drs. Ronald Vukman (R. 572, 573, 877, 878, 1185, 1188) and Thomas McElligott (R. 933; Docket No. 9, Pl. Memo. at 16); the ALJ gave all three opinions little weight (R. at 28-29). Defendant counters that the ALJ considered Dr. Wohlgemuth's opinion and gave

it appropriate weight while including restrictions in the RFC (Docket No. 14, Def. Memo. at 8) and considered the conflicting opinions with the other doctors (id.). Defendant compared Dr. Wohlgemuth's opinion with the RFC to conclude that the RFC incorporates the doctor's opinion (id. at 8-9).

24.     The ALJ noted that Plaintiff alleged having difficulty reaching or stooping (R. at 25). Plaintiff testified that his wife helped him dress because it was hard for him to bend down and tie his shoes (R. at 58; Docket No. 9, Pl. Memo. at 6). The ALJ concluded, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported from ALJ's evaluation of the medical evidence (R. at 25).

25.     Defendant argues that the ALJ appropriately weighed these doctors' opinions but also incorporated their restrictions in the RFC (Docket No. 14, Def. Memo. at 8-9). As Plaintiff argues (Docket No. 9, Pl. Memo. at 14), however, the only basis for this dichotomy is the ALJ weighing the medical evidence as a lay person. The ALJ is not a medical professional and not qualified to assess the RFC based on "bare medical facts," Ortiz v. Colvin, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (Larimer, J.); Johnson v. Comm'r of Soc. Sec., 351 F. Supp.3d 286, 291-92 (W.D.N.Y. 2018) (Wolford, J.); Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).

26.     It is unclear how the ALJ evaluated these opinions and rendered the RFC limitations. This Court fails to see the inconsistency between the opinions of Drs. Wohlgemuth, Vukman, and McElligott noted by Defendant and ALJ never claimed any inconsistency there although giving different weights their respective opinions (id. at

17). These doctors had consistent opinion about Plaintiff's limitations from 2015 to 2018 (R. at 572-73, 877-87, 1185-85, 756, 915, 933, 918-23).

27.	Given the remand for reconsideration of the physical RFC, the ALJ also may reassess the psychological RFC based upon Plaintiff's objections (Docket No. 9, Pl. Memo. at 18-20). Plaintiff now claims that granting little weight to the opinion of state agency psychological consultant N.P. Shahid Ali (R. at 760) based upon internal inconsistency and reliance upon an old version of "Paragraph B" criteria (R. at 29) and limited weight to the opinion of Joe DelVecchio, LMSW, because his opinion was conclusory and made the ultimate determination on disability that is reserved to the Commissioner (Docket No. 9, Pl. Memo. at 18; R. at 386, 29) was erroneous (Docket No. 9, Pl. Memo. at 18-20). He also faults the ALJ's consideration of the opinion of Christine Ransom (R. at 925-28) by giving only limited weight to her opinion (R. at 29; Docket No. 9, Pl. Memo. at 19-20).

28.	Given the mandate stated above for remand for the physical impairments, this Court merely acknowledges that the psychological impairments also may be reconsidered on remand without dictating the result of such reevaluation.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:  August 19, 2021
        Buffalo, New York


                                              s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge